[No. B049035. Second Dist., Div. Five. Dec. 18, 1991.]

HAROLD NOWLON, Plaintiff and Appellant, v.
KORAM INSURANCE CENTER, INC., Defendant and Respondent.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section III of the Discussion.

COUNSEL

Yanz, Heyler & Hertz and Robert A. Brock for Plaintiff and Appellant.

Meyers, Bianchi & McConnell, Martin E. Pulverman and Jacqueline Diamond for Defendant and Respondent.

**BOREN, J.**—The trial court sustained demurrers to Harold Nowlon's first amended complaint without leave to amend. We conclude that Nowlon should be permitted to amend the complaint and reverse.

### FACTS

Nowlon alleges that he was injured when he slipped and fell at his place of employment. He theorizes that his fall was caused by the negligent acts of Western Building Cleaning Company (Western), which is not a party to this action.

Western had a general liability insurance policy issued by Mutual Fire Marine and Inland Insurance Company, located in Pennsylvania (Mutual). Mutual, which is also not a party to this action, agreed to insure Western against liability to third parties for personal injuries arising out of Western's business activities. Respondent Koram Insurance Center, Inc. (Koram) brokered the policy to Western.

Nowlon brought suit against Western in 1984. In 1989, he discovered that Mutual, Western's insurer, had become insolvent.[2] He also discovered that Mutual was not authorized to transact business in the State of California. As a result, Mutual was not a member of the California Insurance Guarantee Association (CIGA), which guarantees the obligations of insolvent insurers operating in California.

Nowlon then instituted this lawsuit against Koram, asserting that he was damaged by Koram's brokering of an insurance policy for an insurer which was not admitted to sell insurance in California and not a member of CIGA. His first amended complaint sets forth causes of action for breach of contract and negligence per se, although he appears to have abandoned his contract claim on appeal. His remaining theory of recovery, negligence per se, is based on a violation of various sections of the Insurance and Penal Codes. These statutes prohibit the sale of insurance for an insurer which is not authorized to sell insurance in California, unless such sales are made by a surplus line broker.

Nowlon appeals after the trial court sustained Koram's demurrers without leave to amend.

DISCUSSION

I

*Appealability of Order*

An order sustaining demurrers without leave to amend is not an appealable order. (Code Civ. Proc., § 904.1; *Munoz v. Davis* (1983) 141 Cal.App.3d 420, 431 [190 Cal.Rptr. 400].) In this case, however, the substantive issues on appeal have been fully briefed by both parties. In the interests of justice and to prevent unnecessary delay, we deem the order sustaining the demurrer as incorporating a judgment of dismissal and treat Nowlon's notice of appeal

---

[2]It appears that Nowlon's action against Western has been stayed because Western has filed for bankruptcy. We take judicial notice that Mutual was declared insolvent by the Commonwealth Court of Pennsylvania on February 3, 1989.

as applying to the dismissal. (*Ibid.*; *People* ex rel. *Rominger* v. *County of Trinity* (1983) 147 Cal.App.3d 655, 658 [195 Cal.Rptr. 186].)

II

### Appellant's Negligence Per Se Theory of Recovery

Appellant seeks to proceed on a negligence per se theory. The statutes he relies upon—Insurance Code sections 703, 1761 and 1776, and Penal Code section 439—prohibit the sale of insurance for an insurance company which is not admitted to transact business in California, unless the sale is made through a surplus line broker.[3] He alleges that Koram sold insurance for Mutual, an insurer which is not admitted to transact business in California, in violation of these statutes. As a result of Koram's violation of these statutes, Nowlon's argument continues, he was deprived of his right to make a claim against CIGA when Mutual declared bankruptcy.

■ Disobedience of a statute for which criminal sanctions are imposed does not amount to civil negligence as a matter of law under all circumstances. However, a presumption of negligence may arise from the statutory violation. (*Gallup* v. *Sparks-Mundo Engineering Co.* (1954) 43 Cal.2d 1, 9 [271 P.2d 34].) Negligence may be presumed if (1) the defendant violated a statute; (2) the violation proximately caused injury to the plaintiff; (3) the injury resulted from an occurrence which the statute was designed to prevent; and (4) the plaintiff was one of the class of persons for whose protection the statute was adopted. (Evid. Code, § 669; *Selger* v. *Steven*

---

[3]Insurance Code section 703 reads, "Except when performed by a surplus line broker, the following acts are misdemeanors when done in this State: [¶] (a) Acting as agent for a nonadmitted insurer in the transaction of insurance business in this State. . . ."

Insurance Code section 1761 states, ". . . a person within this State shall not transact any insurance on property located or operations conducted within, or on the lives or persons of residents of this State with nonadmitted insurers, except by and through a surplus line broker licensed under this chapter, and upon the terms and conditions prescribed in this chapter."

Insurance Code section 1776 states, in pertinent part, "It is a misdemeanor for any agent or broker to solicit, negotiate or effect any insurance governed by the provisions of this chapter in nonadmitted insurers, except by and through a surplus line broker or special lines' surplus line broker licensed pursuant to this chapter."

Penal Code section 439 provides that "Every person who in this State procures, or agrees to procure, any insurance for a resident of this State, from any insurance company not incorporated under the laws of this State, unless such company or its agent has filed the bond required by the laws of this State relating to insurance, is guilty of a misdemeanor." The note to section 439 observes that this section was repealed insofar as it conflicts with the provisions of section 596 of the Political Code (Stats. 1929, ch. 210, p. 377). Political Code section 596 was repealed and re-enacted as Insurance Code section 1761, *supra*, thus the surplus line broker proviso must be read into Penal Code section 439.

Brothers, *Inc.* (1990) 222 Cal.App.3d 1585, 1590 [272 Cal.Rptr. 544].)[4] The issues of whether the injury resulted from an occurrence which the statute was designed to prevent and whether the plaintiff was one of the class of persons for whose protection the statute was adopted are questions of law. (*Michael R.* v. *Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1066 [205 Cal.Rptr. 312].)

Appellant reasons that Koram's violation of the statutes in the Insurance and Penal Codes making it a misdemeanor to sell the insurance of nonadmitted insurers gives rise to a cause of action for negligence per se. He asserts that the misdemeanor statutes, in combination with the CIGA statutes (Ins. Code, § 1063 et seq.), create "a statutory scheme to protect California claimants from insurer insolvencies by requiring participation of all admitted insurers and imposing liability on those who, for a commission, would wrongfully transact insurance with nonadmitted insurers." He concludes that his injury (i.e., his lack of recourse against a financially responsible party) proximately resulted from an occurrence (i.e., Koram's sale of Mutual's insurance) which this statutory scheme was designed to prevent. Appellant also argues that as a member of the public, he is one of the class of persons the statutory scheme was designed to protect and to whom Koram owed a presumptive duty of care.

A. *Has appellant properly alleged that respondent violated the Insurance and Penal Codes?*

Nowlon admits that if Koram is a surplus line broker, or if Koram obtained the insurance through a surplus line broker, then Koram's procurement of insurance from a nonadmitted out-of-state insurer was not prohibited by Insurance Code sections 703, 1761 or 1776, nor by Penal Code section 439. Koram contends that Nowlon's failure to allege in the first amended complaint that Koram was not a surplus line broker or that Koram did not procure the insurance through a surplus line broker means that appellant failed to sufficiently allege a cause of action for negligence per se. While Koram did alert the trial court that it was not illegal under all circumstances to obtain insurance from a nonadmitted insurance company, Koram failed to precisely raise this issue in the court below. From the record, the appellate briefs and what has been stated at oral argument, we find that it is possible Nowlon could further amend the complaint to allege specifically that Koram neither was nor utilized a surplus line broker. Under these circumstances, we

---

[4]Evidence Code section 669 applies to negligence in business transactions resulting in injury to economic interests as well as to personal injury actions. (See *Huang* v. *Garner* (1984) 157 Cal.App.3d 404 [203 Cal.Rptr. 800] and *Transamerica Title Ins. Co.* v. *Green* (1970) 11 Cal.App.3d 693 [89 Cal.Rptr. 915, 44 A.L.R.3d 543].)

believe the fairest procedure upon remand of this case is to permit Nowlon the opportunity to amend the complaint, if he can, to allege that the insurance policy at issue was not obtained by or through a surplus line broker. The proof on that factual question should be readily available, and, should such an allegation be untrue, the case may easily be decided on a motion for summary judgment. However, while this case is still in the pleadings stage, we cannot resolve the question of whether or not Koram is or utilized the services of a surplus line broker. We shall examine the other issues pertaining to the negligence per se question with the assumption that no surplus line broker was involved in this insurance transaction.

## B. *Did appellant suffer injury by loss of CIGA benefits?*

We requested additional briefing on the question of whether CIGA was designed to cover the claims of third parties such as Nowlon. After considering the parties' arguments and examining the legislative history of the controlling statutes, we are satisfied that Nowlon would have been entitled to make a claim for CIGA benefits had Mutual been a member of CIGA when its insurance was sold in California by Koram.

Insurance Code section 1063.1 defines covered claims under CIGA. At the time the CIGA statutes were introduced, the digests accompanying the proposed legislation, Assembly Bill No. 1310, stated that "Covered claims eligible for payment by the guarantee association are defined as those arising out of policies issued to residents of this state or payable to residents of this state, which are unpaid by the insolvent insurer, and are presented as a claim to the liquidator and were timely filed with him." (Undated legis. mem. regarding Assem. Bill No. 1310 as amended June 19, 1969.) A letter from the bill's author conveying the legislation to then-Governor Ronald Reagan for his signature on August 11, 1969, stated that the effect of CIGA was to guarantee that "all members of the public in California can be assured that their claims will be paid despite the fact that a company may become insolvent." The letter goes on to note that "the bill immediately gives relief to claimants and policyholders" of a small insurance company which had declared bankruptcy.

Despite these statements regarding the scope of CIGA, section 1063.1 as enacted was ambiguous as to third party claimants. Accordingly, an attempt to clarify the statute was made in 1983 with Senate Bill No. 350, whose stated purpose was to "make[] clear that 'claimant' as used in the statute includes both first and third party claimants." (Mem. from Sen. Finance, Insurance, and Commerce Com., June 23, 1983.) This task was supposedly accomplished by changing then-subdivision (7) (now subdivision (9)) to read

that " 'Covered claims' shall not include (i) any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article available to the claimant or insured . . .", the underlined addition intended to draw a distinction between insureds who made claims and third parties who made claims.[5]

Thus, both the original legislation and its subsequent amendment attempted to define the scope of CIGA as encompassing both insureds and third party claimants. The intent to allow third party claims was present, even if the language used in the statute was not equal to the task of clearly expressing this intent.

Although there are no cases in which the issue before the court was whether CIGA permitted third party claims, there are cases applying to CIGA which suggest that third party claims are in fact permissible. In *California Ins. Guarantee Assn.* v. *Liemsakul* (1987) 193 Cal.App.3d 433 [238 Cal.Rptr. 346], for example, a third party made a claim against an insured whose insurer subsequently went bankrupt. CIGA became involved by virtue of this insolvency. The third party received uninsured motorist coverage from his own insurer, State Farm. In a declaratory relief action, CIGA was attempting to get full credit for State Farm's payment to the third party to reduce its own obligation to him. The court, Division Three of this District, agreeing with CIGA, wrote, "CIGA was created in 1969 to protect policyholders of insolvent insurers *and third parties claiming under policies issued by insurers that become insolvent.*" (193 Cal.App.3d at pp. 438-439, italics added. See also *Ohrbach's, Inc.* v. *California Ins. Guarantee Assn.* (1988) 204 Cal.App.3d 1089, 1092 [251 Cal.Rptr. 679].)

In sum, legislative and judicial authority support the conclusion that Nowlon, as a third party claimant, would have been entitled to make a claim against CIGA had Mutual been a member.

C. *Did Nowlon's injury result from an occurrence the statutes were designed to prevent?*

Nowlon appears to assume that a cause of action for negligence per se may be stated any time a legislative enactment is violated. This is not the case. ■ "A statute that provides for a criminal proceeding only does not create a civil liability; if there is no provision for a remedy by civil action to

---

[5]This attempt at clarification was apparently not clear enough, prompting yet another amendment to section 1063.1 in 1987. The 1987 amendment added subdivision (g) to Insurance Code section 1063.1. It defines a claimant as "any insured making a first party claim or any person instituting a liability claim; . . ." The parties agree, however, that subdivision (g) does not apply retroactively to this case.

persons injured by a breach of the statute it is because the Legislature did not contemplate one." (*Clinkscales* v. *Carver* (1943) 22 Cal.2d 72, 75 [136 P.2d 777].) As noted in the Restatement Second of Torts, the initial question is always whether the legislation should be given any effect in a civil suit if there is no provision for civil liability. "Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action. . . . [¶] . . . When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so." (Rest.2d Torts, § 286, com. d, p. 26.)

 In this case, the general purpose of these statutes seems clear. Sections 703, 1761 and 1776 make certain that California licensing requirements with their attendant controls will be in effect as to any insurance which is sold for the benefit of California citizens. At a minimum, it appears that these statutes were designed so that any contract of insurance sold to provide coverage for injury resulting from occurrences within California would be subject to all protections provided under California law. Among those protections are, of course, CIGA benefits in the event of insolvency of the insurer. The CIGA fund is maintained by contributions from California insurers. Nonadmitted insurers are not subject to contributions, nor would they be readily susceptible to other California regulatory controls which promote fiscal responsibility. The case of an insolvent insurer and a claimant with no recourse to the CIGA fund is precisely one of the types of occurrences which these prohibitive statutes were designed to prevent. Had the insurance in this case been obtained from an admitted insurer, the CIGA fund, of course, would have been accessible.

D. *Was Nowlon a member of the class the misdemeanor statutes were designed to protect?*

There is some authority suggesting that the Legislature's purpose in enacting Insurance Code sections 703, 1761 and 1776—the statutes relied upon by Nowlon—was to benefit insurance *buyers* alone. Construing these statutes, the state Attorney General has observed that the purpose of Insurance Code section 703 is to "permit[] transaction of insurance of a nonadmitted insurer by a surplus line broker. The surplus line broker's license provides a safeguard in lieu of [ ] capitalization requirements as the surplus line broker and the surplus line broker's association follow a system of self-policing, filing, and review which provides a responsible intermediary between an insured and a foreign insurer." (49 Ops.Cal.Atty.Gen.

55, 57 (1967).)[6] Similarly, Insurance Code section 1776 "affords dual protection to the insurance buyer. It protects an insured from unreliable insurance companies by requiring placement by a surplus line broker and ensures trustworthiness in the selling of insurance by permitting only licensed brokers or agents to solicit, negotiate and effect such insurance." (49 Ops.Cal.Atty.Gen., *supra*, 55, 58.)

We agree with appellant that a more generous reading of the statutes forbidding the sale of insurance from a nonadmitted insurer is required. The insurance business in California is "quasi public" in nature, and the reasonable expectation of both the insured and the general public is that those engaged in the insurance business have extracontractual duties to act reasonably and lawfully. (*Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 669-670, 673-674 [79 Cal.Rptr. 106, 456 P.2d 674].) In *Barrera*, the Supreme Court liberally construed the Financial Responsibility Law of California and found the main objective of those statutes to be protection of third parties who are injured by negligent drivers. (*Id.* at pp. 671-672.) The Supreme Court observed that privity of contract was not a prerequisite to the existence of the duty to exercise ordinary care and that the quasi-public nature of the insurance business meant that the insurer had an extracontractual duty to promptly and reasonably investigate the insurability of its insured. In *Barrera*, since no such investigation had been conducted and the automobile insurance policy had been issued based upon misrepresentation by the insured, the policy was void *ab initio*. Nonetheless, the Supreme Court ruled that the insurer had incurred a direct duty to those members of the public who stood to benefit from the validity of the insurance contract which existed for their protection as well as for the protection of the insured. (71 Cal.2d at pp. 676-677.) As a result, despite the insurance company's right to rescind the insurance policy, the injured third party was not precluded from recovering from the insurer. (*Id.* at p. 677-679.)

Similarly, when an intermediary third party undertakes to obtain liability insurance but negligently or fraudulently fails to do so and a third party is injured by the intended insured, that third party may maintain a breach of contract suit as a third party beneficiary in light of Insurance Code section 11580, subdivision (b), which permits a third party to bring an action against the insurer on the policy based upon judgment against the insured. (*Johnson* v. *Holmes Tuttle Lincoln-Merc.* (1958) 160 Cal.App.2d 290 [325 P.2d 193].)

 Thus, we conclude that Insurance Code provisions governing contracts of insurance entered into in California generally have a central purpose

---

[6]The surplus line broker must also post a bond in favor of the people of California, and show him or herself to be sufficiently trustworthy and competent so as to safeguard the interests of insureds. (Ins. Code, § 1765.)

of not only protecting the insured but of also safeguarding the rights of third parties who may be injured by the acts or omissions of the insured.

The complaint in this case alleges that the broker acted in defiance of statutes which prohibit procurement of insurance from a nonadmitted insurer. It also alleges that because the broker so acted, the injured third party has been divested of the opportunity to seek recovery through the CIGA fund. ■ A broker's failure to obtain the type of insurance requested by an insured may constitute actionable negligence and the proximate cause of injury. (*Greenfield* v. *Insurance Inc.* (1971) 19 Cal.App.3d 803, 810-811 [97 Cal.Rptr. 164].) However, it is not necessary that an insurance buyer advise his agent or broker that he desires his insurance be lawfully obtained. Such a requirement is ordinarily implicit in his request for an insurance policy. And, as noted above, CIGA was created to protect not only policyholders of insolvent insurance companies but also third parties claiming under such policies. (*California Ins. Guarantee Assn.* v. *Liemsakul, supra,* 193 Cal.App.3d 433, 438-439.) The broker's negligence here was just as detrimental to the third party as to the insured. We believe that the duty of the broker or insurer, which is incurred in the procurement or issuance of an insurance policy, runs not only to those who contracted for the insurance policy but also "runs directly to the class of potential victims of the insured." (*Barrera* v. *State Farm Mut. Automobile Ins. Co., supra,* 71 Cal.2d 659, 675.) Nowlon falls within that class.

### III

*The Statute of Limitations Issue\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed, and the trial court is directed to permit appellant to amend his complaint. Each side to bear its own costs.

Turner, P. J., and Ashby, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 26, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

*See footnote 1, *ante*, page 1437.