BARBARA A. McKELVEY et al., Plaintiffs and Appellants, v.
BOEING NORTH AMERICAN, INC., et al., Defendants and Respondents.

[No. B125298. Second Dist., Div. One. June 29, 1999.]

JAMES K. AURNESS et al., Plaintiffs and Appellants, v.
BOEING NORTH AMERICAN, INC., et al., Defendants and Respondents.

[No. B130137. Second Dist., Div. One. June 29, 1999.]

BOEING NORTH AMERICAN, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CECIL ADAMS et al., Real Parties in Interest.

[No. B130146. Second Dist., Div. One. June 29, 1999.]

BOEING NORTH AMERICAN, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AARON DAVIS et al., Real Parties in Interest.

**[Opinion certified for partial publication.†]**

*Reporter's Note: This opinion was previously published at 73 Cal.App.4th 601. It is being republished because the opening paragraph of the opinion was omitted from the previous version due to the publisher's error.

†Two requests for publication having been received, and it appearing on reflection that partial publication is appropriate in this case, our opinion filed June 29, 1999, is hereby certified for partial publication, *except* for parts III, IV, V and VI.

154

COUNSEL

Engstrom, Lipscomb & Lack, Walter J. Lack, Gary A. Praglin, Jennifer R. Schrack; Girardi & Keese, Thomas V. Girardi, James B. Kropff; Masry & Vititoe and Edward L. Masry for Plaintiffs and Appellants and for Real Parties in Interest.

Munger, Tolles & Olson, Brad D. Brian, Stephen M. Kristovich, Bernardo Silva for Petitioners and for Defendants and Respondents Boeing North American, Inc., North American Rockwell Corporation, Rockwell Manufacturing Company, Rockwell Standard Corporation, Rocketdyne, Inc., North American Aviation, Inc., Rockwell International Corporation and Atomics International, Inc.

Cooley Godward, Gordon C. Atkinson and Kathleen A. Howard for Petitioners and for Defendants and Respondents Raytheon Company, Hughes Aircraft Company and General Motors Corporation.

No appearance for Respondent.

OPINION

**VOGEL (Miriam A.), J.**—The issue in these consolidated cases is whether the plaintiffs have pled facts sufficient to establish delayed discovery of their claims or whether, instead, their complaints were filed too late. We conclude the actions are time barred.

### A. The 1997 Actions

#### 1. McKelvey

In October 1997, Barbara A. McKelvey and John Walakavage (collectively McKelvey) filed a class action against Boeing North American, Inc., Rockwell International Corporation, Rocketdyne, Inc., Atomics International, Inc., Hughes Aircraft Company and others.[1] In her first amended complaint filed in April 1998, McKelvey alleges that, beginning in the 1940's and continuing into the 1980's, Boeing "systematically, methodically and generally" caused the contamination of the land at and around four of its Southern California facilities (the Rocketdyne facilities), as a result of which McKelvey was damaged.[2] She alleges that tests conducted by Boeing during 1991 confirmed the existence of groundwater contamination and that, during the early 1990's, both the federal government and the State of California issued clean up orders. She alleges that, in 1994, two physicists were killed and a technician was injured in an explosion at one of the Rocketdyne facilities. She alleges that there followed a series of lawsuits, including wrongful death claims by the physicists' families, a shareholders' action, and criminal charges alleging the illegal storage and disposal of hazardous waste. Guilty pleas were ultimately entered and a fine of $6.5 million was paid. *She does not allege that she was unaware of any of these events.*

McKelvey alleges that Boeing's "operations . . . were veiled in secrecy. Thousands of residents and workers in the surrounding communities, for

---

[1]*With regard to the plaintiffs:* To be precise, the second-named plaintiff in the original complaint was Stacy Jo Zellinger-Thykeson, who was later replaced with Walakavage. On another point, we note that some of the plaintiffs are minors represented by guardians ad litem. Since no issues are raised about any rights they may have by reason of their minority, we do not express any views about the effect of this opinion on them. (See Code Civ. Proc., § 352.) *With regard to the defendants:* Although we sometimes refer to the defendants other than Boeing by name, our references to Boeing are intended to include all of the defendants. Raytheon Company, Hughes Aircraft Company and General Motors Corporation have joined in Boeing's briefs.

[2]The facilities are (1) Rocketdyne's Santa Susana Field Laboratory located in Simi Valley, (2) the Atomics International facility in Canoga Park, (3) the Atomics International facility on De Soto Avenue in the San Freehand Valley, and (4) the Hughes Aircraft facility on Fallbrook Avenue in the San Fernando Valley.

decades, have used and continue to use drinking water, to garden and work the contaminated soil and to eat citrus and vegetables growing in the contaminated soil on their properties. Those who worked at or near the Rocketdyne Facilities inhaled, ingested and were otherwise exposed to the contaminated soil, water and vapors. Further, these residents and workers have used and enjoyed and continue to use and enjoy their neighborhoods, community, homes and properties while unknowingly being exposed to contaminants contained in the soil and groundwater. Not only were they unknowingly ingesting TCE, they were consuming many other hazardous wastes. These hazardous substances were released into the soil and groundwater, causing further exposure. *Even though public notices and newspaper articles were published about [Boeing's]* intentional, reckless and/or negligent conduct, Plaintiffs were and are not aware of the actual and potential harm caused by this conduct." (Italics added.) McKelvey does not say when or how she ultimately learned whatever it was she needed to know to file her lawsuit.[3]

### 2. *Aurness*

In October 1997, James K. Aurness (and several dozen other named individuals, including the two named plaintiffs in the McKelvey class action) filed a "direct action" against Boeing. In his first amended complaint filed in April 1998, Aurness alleges the same facts alleged by McKelvey. The difference is status, with Aurness alleging that "Plaintiffs reside, live and work in the counties of Los Angeles and Ventura, and, at the time of sustaining the injuries complained of [in the complaint], have been the owners, lessees and/or occupants of certain real property consisting of land, buildings and various types of residences located at or near the Rocketdyne Facilities . . . ."[4]

### 3. *The Demurrers*

Boeing demurred to all causes of action alleged in the *McKelvey* and *Aurness* first amended complaints, contending the substantive claims were

---

[3]The class purportedly represented by McKelvey is comprised of "all persons who have worked or resided within the boundaries of the Rocketdyne Facilities" (as those boundaries are defined by the complaint) and "who have been damaged as a result of [Boeing's] negligent, intentional and/or reckless conduct and contamination of the Rocketdyne Facilities and resulting contamination of the surrounding water and soil during the period from the 1940's to the present." On behalf of these persons, McKelvey alleges 13 causes of action: negligence, strict liability, trespass, public nuisance, private nuisance, negligence per se, absolute liability for ultrahazardous activity, fraudulent concealment, intentional infliction of emotional distress, intentional spoliation of evidence, "negligent destruction of evidence needed for prospective civil litigation," injunctive relief and declaratory relief.

[4]*McKelvey* and *Aurness* were deemed related actions and were assigned to the same trial judge (Hon. Valerie Baker).

all barred by limitations. (Code Civ. Proc., §§ 338, subd. (b), 340, subd. (3).)[5] Boeing contended that, on its face, the *McKelvey* and *Aurness* pleadings were insufficient to show delayed discovery. In addition, Boeing asked the court to judicially notice 117 documents—copies of newspaper articles, transcripts of radio and television broadcasts, and government "fact sheets" describing and discussing the contamination at the Rocketdyne facilities. Boeing's position was and is that McKelvey and Aurness knew or, as a matter of law, could (with the exercise of reasonable diligence) have earlier discovered the facts essential to their causes of action. Over the opposition of McKelvey and Aurness, the trial court sustained most of the demurrers without leave to amend.[6]

Plaintiffs' motions for reconsideration were denied in both cases, as were motions for leave to file second amended complaints.[7] McKelvey and Aurness then voluntarily dismissed their remaining claims (trespass, nuisance, and declaratory and injunctive relief) and final orders of dismissal were entered. McKelvey and Aurness appeal.[8]

---

[5]The demurrer in *McKelvey* also asserts that the claims there alleged fail as a matter of law to state a class action or, alternatively, that all proceedings in *McKelvey* ought to be abated on the ground that another action (*Aurness*) was pending. The demurrers in both *McKelvey* and *Aurness* asserted that all counts failed to allege facts sufficient to state a cause of action, that the public nuisance claims failed because the plaintiffs had not alleged the requisite special injury, and that the claims for declaratory and injunctive relief were really no more than prayers for specific relief, not independent causes of action.

[6]Judge Baker overruled demurrers to the trespass and public and private nuisance causes of action (but only insofar as the allegation was that the violations were continuing), and granted leave to amend as to the declaratory and injunctive relief claims.

[7]The proposed second amended complaints added these allegations: McKelvey "owns and occupies real property located within five . . . miles of the Rocketdyne Facilities." She doesn't say which facility. Walakavage "worked at one of the Rocketdyne Facilities performing activities directly related to the operations of the Rocketdyne Facilities and subject to the control of [Boeing]." He doesn't say which facility. Boeing has "long been engaged in a massive cover-up of [the alleged] illegal activities just as it had long been engaged in the illegal storage and destruction of hazardous wastes. [Boeing's] officials continued to vehemently deny that the scientists were engaged in the illegal destruction of hazardous waste." "Plaintiffs discovered that they may have sustained injuries as a result of their exposure to contamination of their environment less than one year prior to filing the instant action against [Boeing]. Prior to that time, Plaintiffs did not suspect that the injuries they may have suffered were caused by any particular act of wrongdoing. [¶] No plaintiff was ever informed by [Boeing] that the water, air or soil to which they were exposed was contaminated with any toxic substance that might cause a health risk. Any public comment about contamination of the environment caused by the conduct of [Boeing] only assured the public that no health hazard was posed. At no time was there ever a publicly disclosed reason to suspect that the activities of [Boeing] at the [facilities] were wrongful or would cause injuries to Plaintiffs."

[8]The notices of appeal in *McKelvey* and *Aurness* were filed on August 28, 1998, which preceded by three days their dismissal of their then remaining claims. The orders of dismissal were entered on September 2. We nevertheless deny Boeing's motion to dismiss the appeals. Although Boeing correctly asserts that the appeal lies from the order of dismissal, not from

## B. *The 1998 Actions*

### 1. *Adams*

In September 1998 (that is, after the demurrers had been sustained in the 1997 actions), Cecil Adams and several hundred other named individuals sued Boeing, alleging the same facts alleged in *Aurness*. There are two additional allegations. First, Adams adds this to the description of the named plaintiffs: "Certain plaintiffs, at the time of sustaining the injuries complained of herein, were employed by [Boeing], or were employed to work on or at the Rocketdyne Facilities to perform various activities within a particular industry directly related to the operations of the Rocketdyne Facilities and subject to the control of [Boeing]." Second, Adams adds the following allegations about delayed discovery:

"Plaintiffs first became aware that they may have sustained injuries as a result of their exposure to contamination arising from the conduct of [Boeing] when the final report of the University of California at Los Angeles' Rocketdyne Worker Health Study was published. Prior to that time, Plaintiffs did not suspect that the injuries they may have suffered were caused by any particular act of wrongdoing and/or were prevented from doing so by [Boeing's] conduct [as described elsewhere in the] Complaint. Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of their injuries at an earlier time because of [Boeing's] misrepresentations. [¶] No plaintiff was ever informed by [Boeing] that the water, air or soil to which they were exposed was contaminated with any toxic substance that might cause a health risk. Any public comment about contamination of the environment caused by the conduct of [Boeing] only assured the public that no health hazard was posed. At no time was there ever a publicly disclosed reason to suspect that the activities of [Boeing] at the [facilities] were wrongful or would cause injuries to Plaintiffs."

### 2. *Davis*

In October 1998, Aaron Davis and three other named individuals filed a complaint against Boeing. This action is indistinguishable from Adams's action.[9]

---

the order sustaining the demurrer, that fact is not dispositive where, as here, we can treat the earlier order as incorporating the appealable order. (*Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440-1441 [2 Cal.Rptr.2d 683].) In this regard, we note that Boeing waited until McKelvey and Aurness had filed their opening briefs, and that the motion to dismiss was filed at the same time as Boeing's respondent's brief.

[9]*Davis* and *Adams* were deemed related to each other and to *McKelvey* and *Aurness,* and were originally assigned to Judge Baker. After an affidavit pursuant to section 170.6 of the

### 3. *The Demurrers*

Boeing demurred to the *Adams* and *Davis* complaints on the same grounds asserted in *McKelvey* and *Aurness*, and supported the demurrers with the same requests for judicial notice. In February 1999, Judge Wasserman denied the requests for judicial notice and overruled most of the demurrers, although one was sustained without leave to amend (strict liability) and two with leave to amend (fraudulent concealment and violation of Business and Professions Code section 17200). Boeing (which had just filed its respondents' briefs in *McKelvey* and *Aurness*) then filed a petition for a writ of mandate in which it asked us to compel Judge Wasserman to vacate her orders and sustain the demurrers without leave to amend. We issued an order to show cause so that we could consider all four cases at the same time.[10]

### DISCUSSION

On appeal, McKelvey and Aurness contend (I) they should have been permitted to file their second amended complaints which, they say, are sufficient to invoke the delayed discovery rule; (II) the trial court should not have judicially noticed the "truth" of the facts stated in the documents submitted by Boeing in support of its demurrers; (III) the fraudulent concealment cause of action is sufficient to overcome a demurrer because Boeing is equitably estopped from asserting the bar of limitations as a defense to that claim; (IV) they should have been permitted to amend their claims for strict liability, (V) nuisance, and (VI) trespass; and (VII) their claims alleging violations of section 17200 of the Business and Professions Code were timely filed. Boeing disputes all of these claims, and in its petitions contends the demurrers in *Davis* and *Adams* should have been sustained without leave to amend because they are time barred.

### I.

Plaintiffs contend the allegations of their complaints are sufficient to invoke the delayed discovery rule. We disagree.

---

Code of Civil Procedure was filed against Judge Baker in *Davis* and *Adams*, those cases were reassigned to another judge (Hon. Fumiko Wasserman).

[10]In their opposition to Boeing's writ petitions, Adams and Davis have provided us with copies of the third amended complaints thereafter filed in their actions. Adams has appended to his pleading lists of the names of those plaintiffs designated as "Rocketdyne Employees" (those employed *by* Rocketdyne) and those plaintiffs designated as "Rocketdyne Union Workers" (those employees who were "contracted" to work at the Rocketdyne facilities). There are no allegations in the pleading (or on the attachments) to show who worked at which facility. There are conclusory allegations added to the fraudulent concealment cause of action, but no new or additional facts are alleged. Davis's third amended complaint includes the same changes.

By their reliance on the "discovery rule," plaintiffs concede by implication that, without it, their claims are barred by one or more statutes of limitations. (Code Civ. Proc., §§ 340, subd. (3), 338, subd. (b).) ▇ We begin, therefore, by defining the discovery rule. The common law rule—that an action for personal injury or property damages accrues on the date of injury—applies only as modified by the "discovery rule," which provides that the accrual date of a cause of action is delayed until the plaintiff is aware of his injury and its negligent cause. The plaintiff is charged with this awareness as of the date he suspects or should suspect that his injury was caused by wrongdoing, that someone has done something wrong to him. ▇ Accordingly, the period of limitations will begin to run without regard to whether the plaintiff is aware of the specific facts necessary to establish his claim, provided that he has a "suspicion of wrongdoing," which he is charged with once he has "notice or information of circumstances to put a reasonable person on inquiry." (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109-1111 [245 Cal.Rptr. 658, 751 P.2d 923].)[11] ▇ A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer. (*CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536-1537 [282 Cal.Rptr. 80]; *Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1150-1151 [281 Cal.Rptr. 827] [this pleading requirement is a procedural safeguard against lengthy litigation on the issue of accrual]; 3 Witkin, Cal. Procedure, *supra*, Actions, § 602 et seq., p. 773 et seq.)

▇ None of the complaints (not the proposed second amended complaints in *McKelvey* and *Aurness* or the third amended complaints filed in *Adams* and *Davis*) are sufficient because none of them disclose the time or manner of discovery by any plaintiff. They offer only conclusory allegations of Boeing's "massive cover-up," and allegations that plaintiffs discovered

---

[11]There is absolutely no authority for plaintiffs' fanciful contention that they had no duty of inquiry because they were not purchasers or tenants of property owned or managed by Boeing and thus were not in "privity" with Boeing. When it is apparent from the face of the complaint that, but for the delayed discovery rule, the action would be time barred, it is the plaintiff's burden to show diligence. For this reason, the plaintiff must plead (and later prove) *"the facts* showing: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); (c) how and when he did actually discover the fraud or mistake. Under this rule, constructive and presumed notice or knowledge are equivalent to knowledge. *So, when the plaintiff has notice of information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run."* (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 602, p. 773, italics added.)

that they "may have sustained injuries" as a result of Boeing's wrongs "less than one year prior to filing the instant action against [Boeing]."[12] Before that time, they say (without elaboration), they did not suspect any wrongdoing. In short, all they say is that they had no actual knowledge or suspicion about the full nature of their injuries or Boeing's responsibility for those injuries, and that they did not "believe[] [they were] entitled to recourse." They do not allege that they were not aware of facts sufficient to make a reasonably prudent person sufficiently suspicious to investigate further. (*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d at p. 1150.) In light of the facts they *do* allege, these omissions are fatal.

Plaintiffs admitted in their first and subsequently amended complaints that "public notices and newspaper articles were published about [Boeing's] intentional, reckless and/or negligent conduct." In the face of that admission, plaintiffs' conclusory assertion that they "were and are not [*sic*] aware of the actual and potential harm caused by [Boeing's] conduct" is patently inadequate. Without resort to the matters submitted to the court for judicial notice, the bottom line is that plaintiffs' amended (and proposed amended) complaints acknowledge the publicity surrounding Boeing's operation of the Rocketdyne facilities, yet nevertheless fail to explain how they managed to ignore those "newspaper articles." Other than a general reference to an entire year and an ambiguous reference to an undated report ("the final report of the University of California at Los Angeles' Rocketdyne Worker Health Study"), they have not alleged *facts* about the time or manner of discovery; they have not alleged *facts* showing their inability to have made earlier discovery despite reasonable diligence. (*CAMSI IV* v. *Hunter Technology Corp., supra,* 230 Cal.App.3d at pp. 1536-1537; *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d at pp. 1150-1151.) *They do not allege that they did not read, hear or see the articles and broadcasts they admit were published.*

Plaintiffs have had four bites at the apple, and they do not suggest on appeal or in opposition to Boeing's writ petitions that there are additional facts they could plead to satisfy the discovery rule. Instead, they assert an abstract right to amend yet again, and they demand the opportunity to take a fifth bite. They have no such right. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737] [it is not up to the court to figure out how a complaint can be amended; rather, the burden is on the plaintiff to show the manner in which he can amend, and how that amendment will cure the defect]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)

[12]Generously construed, the most that can be said is that McKelvey and Aurness allege that they discovered their claims in 1996, Davis and Adams in 1997.

## II.

On their appeal, plaintiffs contend the trial court (Judge Baker) improperly took judicial notice of the "truth" of "a disputed issue of fact—the time and manner each Plaintiff discovered his . . . cause of action." In their petitions, Boeing contends the trial court (Judge Wasserman) improperly denied Boeing's request for judicial notice. Although the issue is moot in light of our conclusion in part I, *ante,* we do note for the record that, assuming the propriety of judicial notice of newspaper articles, the truth of the facts reported is irrelevant. The 117 documents (newspaper articles, transcripts of radio and television broadcasts, and "fact sheets" distributed by the state and federal governments for the benefit of residents and other interested parties) were offered to show the extent of the widespread publicity about the problems at the Rocketdyne facilities. They were offered to show that, at a time outside the statute of limitations, plaintiffs had notice of or information of circumstances sufficient to put a reasonable person on inquiry. They were offered to show that anyone living in Los Angeles County, and certainly anyone living or working in the vicinity of the Rocketdyne facilities, would have read or heard about the contamination at and around the Rocketdyne facilities. The accuracy of the reporting is irrelevant.[13]

## III.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

In *McKelvey* and *Aurness* (Nos. B125285 and B125298), the judgments are affirmed. In *Adams* and *Davis* (Nos. B130137 and B130146), the petitions are granted, and peremptory writs shall issue commanding the trial court (1) to vacate its orders on the demurrers and (2) to issue new orders sustaining the demurrers without leave to amend. Boeing is entitled to its costs of both the appeal and of the writ proceedings.

Spencer, P. J., and Materson, J., concurred.

Petition for rehearing was denied July 21, 1999, and the following opinion was then rendered.

---

[13]Since plaintiffs did not dispute the accuracy of the relevant facts—that is, that the articles were published, that the shows were broadcast, and that the "fact sheets" were distributed—there is no reason the matter could not have been resolved by demurrer. We mention this only because the parties spent so much time and effort in their briefing, and emphasize that the point is moot.

*See footnote, *ante,* page 601.

**VOGEL (Miriam A.), J.**—By a petition for rehearing, plaintiffs contend that, notwithstanding our view of the current pleadings, we should have remanded all four cases to the trial court to give plaintiffs an opportunity to amend their complaints. We disagree. Although it is an abuse of discretion to sustain demurrers without leave to amend when there is a "reasonable possibility" that the plaintiffs can amend their complaints to cure the defects, the burden is on plaintiffs to show *how the complaints can be amended and how such amendments will change the legal effect of their pleadings.* (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386, 1388 [272 Cal.Rptr. 387].) Notwithstanding that such a showing may be made for the first time on appeal (*id.* at p. 1386), plaintiffs did not do so in this case. **(1c)** Assuming that such a showing could be made for the first time in a petition for rehearing, plaintiffs have not done so with regard to any of these cases. Accordingly, they have failed to establish that there is a reasonable possibility that an amendment would change the legal effect of their pleadings.

The petition for rehearing is denied.

Spencer, P. J., and Masterson, J., concurred.

A petition for a rehearing was denied July 21, 1999, and on July 14, 1999, the opinion was modified to read as printed above. The petition of all appellants and real parties in interest for review by the Supreme Court was denied September 29, 1999.