Filed 1/6/16  Romero-Gold v. County of San Bernadino CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHRISTINA ROMERO-GOLD, | |
| Plaintiff and Appellant, | E060700 |
| v. | (Super.Ct.No. RIC1217476) |
| COUNTY OF SAN BERNARDINO et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on December 14, 2015, be modified as follows:

1.  In the fifth line of the first paragraph on page 6, under the title *1. State Causes of Action*, insert "was" between the words "V.R." and "returned," so that it reads ". . . the date V.R. was returned to . . . ."

2.  On page 11, at the end of the second full paragraph ending "(*Ibid*.)," add as footnote 3 the following:

> [3] We note that in 1995 the Legislature limited the social workers absolute immunity; it no longer extends to perjury, the failure to disclose

1

exculpatory evidence, or fabrication of evidence. (Gov. Code, § 820.21; see *Beltran v. Santa Clara County* (2008) 514 F.3d 906, 908.)

3. At the end of the last line of the last paragraph on page 11, after "leave to amend," add as footnote 4 the following:

[4] In a rehearing petition, Romero-Gold asserts that her second amended complaint can be amended to state a section 1983 claim pursuant to *Monell v. New York City Dept. of Social Services*, *supra*, 436 U.S. 658, against the County. However, in opposition to defendants' demurrer and in her motion for reconsideration, Romero-Gold maintained that her claims were sufficient to withstand demurrer. She failed to allege the unlawful acts taken by defendants that were pursuant to some law, custom, or policy of the County designed to deprive her of her constitutional rights. She further failed to provide this court with those facts during briefing and oral argument. In her petition for rehearing, she seeks judicial notice of her older son's federal complaint against the County that states a *Monell* claim. She claims that the "essential allegations necessary for a *Monell* claim are set forth in [the federal court's] ruling and are available here because it arises, in part, on the same facts." While Romero-Gold may show how she can amend the complaint in the first instance to the appellate court (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322), she has failed to do so. She does not point out the facts that are specific to V.R. such that an amendment could survive a third demurrer.

Except for the above modifications, the opinion remains unchanged. There is no change in the judgment.

Appellant's petition for rehearing is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

      HOLLENHORST

            J.

We concur:

RAMIREZ
        P. J.

KING
      J.

2

Filed 12/14/15  Romero-Gold v. County of San Bernadino CA4/2 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| CHRISTINA ROMERO-GOLD, | |
| Plaintiff and Appellant, | E060700 |
| v. | (Super.Ct.No. RIC1217476) |
| COUNTY OF SAN BERNARDINO et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Christina Romero-Gold, in pro. per., and Thomas C. Nguyen for Plaintiff and Appellant.

Orrock, Popka, Fortino, Tucker & Dolen, Raymond F. Dolen and Keith Fredric Willis, for Defendants and Respondents.

1

Plaintiff and appellant Christina Romero-Gold[1] sued the County of San Bernardino (County) and social worker Jeff Horn (collectively referred to as defendants), alleging various tort claims and civil rights violations stemming from the juvenile dependency's determination to remove Romero-Gold's son, V.R., from her home. Finding that her claims were time-barred, the trial court sustained defendants' demurrer to her second amend complaint (SAC) without leave to amend. In this appeal, Romero-Gold challenges the trial court's findings. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

We presume the facts alleged in the SAC and in the opening brief state the strongest case for Romero-Gold. (See *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1286.) Stripped of legal conclusions (see *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), those facts are as follows: In September 2006, V.R. was taken into protective custody and the County's Department of Child Protective Services (CPS) initiated a dependency case. CPS knew that Romero-Gold had suffered from years of emotional abuse and had a seizure disorder that prevented her from having a driver's license. V.R. suffered from attention deficit disorder. For almost two years, CPS attempted to reunify him with his abusive father. In November 2006, Romero-Gold filed for a divorce from V.R.'s father, and the dissolution was final on August 1, 2008. Also, in August 2008, Romero-Gold's parental rights to her three youngest boys were

---

[1] Although there are two plaintiffs in the underlying action, Romero-Gold and her son, V.R., only Romero-Gold appealed the judgment. Plaintiffs filed a request for dismissal in order to appeal in an "expeditious manner."

terminated. In 2010, V.R.'s father committed a drunk driving vehicular homicide that resulted in his conviction for second degree murder. During the dependency proceedings, Romero-Gold was represented by several different attorneys, whom she complains committed misconduct and/or were incompetent. On or about January 15, 2011, V.R. was returned to his mother's custody. The dependency case was terminated on May 4, 2011.

On November 4, 2011, Romero-Gold presented a claim for damages to the County. Following the County's denial of the claim, she initiated this action on May 4, 2012, alleging various causes of action stemming from CPS's determination to remove V.R. from Romero-Gold's home. The only causes of action concerning this appeal are: (1) violation of civil rights under color of authority under 42 United States Code section 1983 (section 1983); (2) declaratory relief; (3) intentional infliction of emotional distress; (4) negligence; and (5) civil conspiracy. Defendants demurred on the grounds of government immunity, failure to comply with the government claims filing requirements of the California Tort Claims Act (Gov. Code, § 900 et seq.) (Tort Claims Act), and failure to allege a specific federal constitutional violation. On October 30, 2013, the trial court sustained defendants' demurrer without leave to amend on the ground that the claims were untimely. On December 17, 2013, Romero-Gold asked the trial court to reconsider its ruling. The request was denied on January 23, 2014, and she appeals.

## II. DISCUSSION

### A. Standard of Review.

We review de novo the order sustaining the demurrer, treating the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) In reviewing the lower court's ruling on demurrer, we base our statement of the factual and procedural background on the pleadings and such matters as may be judicially noticed. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1381, 1386; *Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

### B. Noncompliance with the Tort Claims Act.

"In actions for damages against local public entities, the claims statutes require timely filing of a proper claim as a condition precedent to the maintenance of the action." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454; Gov. Code, §§ 905, 945.4.) The purpose of the Tort Claims Act "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." (*City of San Jose*, *supra*, at p. 455.) Thus, with certain exceptions enumerated in Government Code section 905, no suit against a public entity for money or damages may be filed until a written claim has been presented and either acted upon or deemed rejected. (Gov. Code, § 945.4.) The written claim must be presented to the public entity within six months of the accrual of the underlying cause of action. (Gov. Code, § 911.2, subd. (a).) However, it is well established that section 1983 claims for damages against a public entity are not subject to the Tort Claims Act's

4

procedural requirement that a plaintiff timely file a claim with the public entity as a prerequisite to later filing an action for damages. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838, 841-842 [claim provisions of Tort Claims Act set forth in Government Code inoperative in section 1983 action]; *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 38.)

## C. Analysis.

Each of Romero-Gold's claims stems from CPS's removal of V.R. from her home in September 2006, and the initiation of a dependency action. In Romero-Gold's section 1983 claim, she contends her rights of confrontation were violated when her children were taken into custody and the social workers submitted false reports to the court, unlawfully holding V.R. in CPS's custody from 2006 to 2011. In the claim for declaratory relief, she asserts a controversy "as to whether the federal and state statutes under which CPS operates are constitutional in that they do not rationally relate to the purpose of preventing child abuse and child neglect, violate families['] fundamental constitutional rights in a manner which is not the least restrictive available, and do not work as applied by San Bernardino CPS." Her claim of intentional infliction of emotional distress is based on CPS's attempts to reunify V.R. with his "abusive father." Based on the allegations supporting these three causes of action, she asserts a claim for negligence. Finally, she alleges defendants conspired to "falsely imprison" V.R. and violate her civil rights.

*1.  State Causes of Action.*

Romero-Gold's stated causes of action fall within the scope of claims for money or damages, and thus, compliance with the Tort Claims Act filing requirements is compelled.  (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079.)  Because the facts supporting her claims of defendants' wrongdoing occurred prior to January 15, 2011, the date V.R. returned to Romero-Gold's custody, she was required to present her claim to the County by July 15, 2011, in order to satisfy the presentment requirements of the Tort Claims Act.  (Gov. Code, § 911.2, subd. (a).)  She presented her claim on November 4, 2011, and did not petition the County or the court for leave to file a late claim.  Thus, her claim was denied as untimely and the trial court sustained defendants' demurrer to her action on the same basis.

On appeal, Romero-Gold acknowledges that if the Tort Claims Act statute of limitations started to run on January 15, 2011, "the federal causes of action survive and the state causes of action are properly dismissed without leave to amend" because she filed her claim more than six months after V.R. was returned to her care.  However, she contends that the Tort Claims Act statute of limitations did not start to run until May 4, 2011, the date the dependency action was terminated.  We reject her contention.

According to the SAC, throughout V.R.'s dependency, Romero-Gold continuously charged defendants, and her own counsel, with negligent acts and/or intentionally violating her rights.  Such acts ceased upon V.R.'s return to her custody on January 15, 2011.  Although the juvenile court's jurisdiction over V.R. was not terminated until May 4, 2011, Romero-Gold has not alleged any negligent acts or intentional violation of

6

her rights from January 15 through May 4, 2011.  Nonetheless, she asserts that from January 15 through May 4, 2011, V.R. was subject to being taken back into CPS's custody and thus "[t]his, in and of itself, constitutes a threat and intimidation sufficient to estop the County from asserting the January 15, 2011 date as the date the governmental claim filing statute started to run."  We disagree.

A cause of action normally accrues at the time of injury.  In some situations, a cause of action accrues when the plaintiff becomes aware of the defendant's wrongdoing as a cause, or could have become aware through the exercise of reasonable diligence.  (*Bastian v. County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 526-527.)  "The plaintiff is charged with this awareness as of the date he suspects or should suspect that his injury was caused by wrongdoing, that someone has done something wrong to him.  [¶]  Accordingly, the period of limitations will begin to run without regard to whether the plaintiff is aware of the specific facts necessary to establish his claim, provided that he has a 'suspicion of wrongdoing,' which he is charged with once he has 'notice or information of circumstances to put a reasonable person on inquiry.'  [Citation.]"  (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160, fn. omitted, superseded in part by statute as stated in *Grisham v. Philip Morris U.S.A.*, *Inc.* (2007) 40 Cal.4th 623, 637, fn. 8.)

At the center of each of Romero-Gold's state tort causes of action is the assertion that defendants wrongfully removed V.R. from her custody, and then refused to return him to her.  Regardless of the date upon which the court terminated its jurisdiction, defendants' alleged wrongful act of keeping V.R. from Romero-Gold ended on

7

January 15, 2011. There are no allegations supporting actionable damages between January 15, 2011, and May 4, 2011, nor has Romero-Gold established that she can amend to add allegations of damages within such limitation period. As the trial court observed, "the false imprisonment, the negligence, conspiracy or emotional distress arguably would have ended once the child was returned to the mom." Based on the allegations in the SAC, we conclude the trial court appropriately found as a matter of law that Romero-Gold's government claim accrued no later than January 15, 2011, and thus her government tort claim, filed in November 2011, was untimely. (Gov. Code, § 911.2, subd. (a).) Consequently, her state tort causes of action are barred.

We therefore conclude that the trial court properly sustained defendants' demurrer to Romero-Gold's claims for the emotional distress, declaratory relief, negligence, and conspiracy, without leave to amend.

2. *Section 1983 Cause of Action.*

"'[T]he state courts of California should apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer.' [Citation.] For the purposes of a demurrer to 'a section 1983 complaint, the allegations of the complaint are generally taken as true. [Citation.]' [Citation.] When a section 1983 complaint is prepared by counsel, '"[t]he controlling standard . . . is that an action may be dismissed for failure to state a claim only if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions. [Citations.] Some particularized facts

8

demonstrating a constitutional deprivation are needed to sustain a cause of action under the Civil Rights Act. [Citations.]' [Citation.]" (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 891.)

Defendants demurred to the section 1983 claim on the grounds the SAC failed to allege any specific federal constitutional violation, the claim was barred by the statute of limitations, and defendants are immune from liability.

Section 1983, as relevant here, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

"Under *Monell* [*v. New York City Dept. of Social Services* (1978) 436 U.S. 658], local governments 'can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.' [Citation.] Local government includes counties as well as cities. [Citations.] [¶] "However, 'a municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.' [Citation.] Thus, 'a local government may not be sued under § 1983 for an

9

injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.' [Citations.]" (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348-349.)

Romero-Gold's section 1983 claim primarily indicts the juvenile dependency system as being "unfair in its judgment of families" and "a wasteful bureaucracy with no clear leader and unclear policies," while specifically alleging that her "rights of confrontation were violated under color of state law when her children were taken into custody." However, these allegations fail to plead facts supporting a finding that defendants advocate a particular custom, regulation, or policy of falsifying dependency reports in order to deprive parents of their right to live with their children.[2] Instead, they assert a legal conclusion, unsupported by any facts, that California's dependency system is designed to deprive parents, like Romero-Gold, of their constitutional right to their

---

[2] Romero-Gold's claims, among other things, that local governments "accustomed to resulting flow of taxpayer dollars to balance growing budgets routinely ignore charges against [CPS]"; bonuses and incentives "cause employees to work diligently to exploit children for government money while parents are charged for the cost of their care"; "[f]raud, fabrication, withholding, and destroying of evidence, unnecessary termination of parental rights, and double dipping are common while minors' rights to confidentiality are used to protect" those associated with the dependency system; "[p]arents . . . are sometimes pressured by CPS agents to divorce their spouse in order to see their children again"; "children die in CPS custody" and relatives are denied custody; children are in "greater danger in CPS custody today than in imperfect homes," including Romero-Gold's children; and "[a]pproximately 85% of the children taken into CPS custody should not be taken." Absent specific facts showing defendants' harbored such improper motives, these conclusory allegations amount to nothing more than mere speculation.

10

children. "[A] complaint stating only 'bare legal conclusions,' even under notice pleading standards, is not enough to survive a [Federal Rule of Civil Procedure] Rule 12(b)(6) motion. [Citation.]" (*Bissessur v. Indiana University Bd. of Trustees* (7th Cir. 2009) 581 F.3d 599, 602; see also *Revene v. Charles County Com'rs* (4th Cir. 1989) 882 F.2d 870, 875 [section 1983 claims are properly dismissed where "critical allegations of a municipal policy . . . are asserted entirely as legal conclusions."].)

Defendants' detention of Romero-Gold's children, standing alone, is not a federal constitutional violation. Moreover, the claim that defendants' detention of her children was improper and motivated by a desire to deprive her of her constitutional rights, is factual unsupported. Throughout the dependency proceedings, defendants' actions were subject to judicial review. Romero-Gold and her children were represented by counsel. If defendants wanted to take any improper action designed to deprive Romero-Gold of her civil rights, the dependency system provided sufficient checks and balances, including the right to appellate review by this court.

Furthermore, social workers are entitled to absolute immunity "in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." (*Meyers v. Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154, 1157.) Otherwise, child services workers could not exercise their independent judgment in dependency proceedings without fear of a "financially devastating civil suit." (*Ibid.*)

We therefore conclude that the trial court properly sustained defendants' demurrer to Romero-Gold's section 1983 claim without leave to amend.

11

## III.  DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                                HOLLENHORST
                                                        J.

We concur:


RAMIREZ
                          P. J.

KING
                          J.