**Elmo SHROPSHIRE, et al., Plaintiffs,**

v.

**The FRED RAPPOPORT COMPANY, Defendant.**

No. C–03–2454 JCS.

United States District Court, N.D. California.

Oct. 3, 2003.

Sanford M. Cipinko, Douglas P. Oh–Keith, Law Offices of Sanford M. Cipinko, San Francisco, CA, for Plaintiffs.

Richard C. Leonard, David N. Schultz, Leonard, Dicker & Schreiber, Beverly Hills, CA, for Defendant.

**ORDER:**

**DENYING MOTION OF DEFENDANT THE FRED RAPPOPORT COMPANY: (1) TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, OR, IN THE ALTERNATIVE, TO STAY ACTION; AND (2) TO DISMISS FOR IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER FOR CONVENIENCE [Docket No. 10]; and**

**DENYING MOTION OF DEFENDANT THE FRED RAPPOPORT COMPANY TO STRIKE SECOND CLAIM FOR RELIEF FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, THIRD CLAIM FOR RELIEF FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND FOURTH CLAIM FOR RELIEF FOR UNFAIR COMPETITION AS "SLAPP" ACTIONS UNDER SECTION 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE; REQUEST FOR ATTORNEY'S FEES AND COSTS [Docket No. 13]**

SPERO, United States Magistrate Judge.

## I. *INTRODUCTION*

On Friday, September 19, 2003, at 9:30 a.m., the following motions came on for hearing:

1. Motion Of Defendant The Fred Rappoport Company: (1) To Dismiss For Failure To State A Claim Upon Which Relief

Can Be Granted, Or, In The Alternative, To Stay Action; And (2) To Dismiss For Improper Venue, Or, In The Alternative, To Transfer For Improper Venue, Or, In The Alternative, To Transfer For Convenience (the "Motion to Dismiss"); and

2. Motion Of Defendant The Fred Rappoport Company To Strike Second Claim For Relief For Intentional Interference With Prospective Economic Advantage, Third Claim For Relief For Negligent Interference With Prospective Economic Advantage, And Fourth Claim For Relief For Unfair Competition As "SLAPP" Actions Under Section 425.16 Of The California Code Of Civil Procedure; Request For Attorney's Fees And Costs (the "Motion to Strike"). For the reasons stated below, both Motions are DENIED.

## II. BACKGROUND

### A. Facts

Plaintiffs, Elmo Shropshire and Elmo Publishing, (collectively, "Elmo Shropshire") and non-party Kris Publishing are co-owners of the copyright to the song "Grandma Got Run Over By A Reindeer" ("the Song"). Complaint at ¶ 6. In May of 1993, Defendant, The Fred Rappoport Company, ("FRC") contacted Elmo Shropshire to inquire about creating an animated motion picture based on the Song ("the Program"). Id. at ¶ 7. According to Elmo Shropshire, Fred Rappoport, of FRC, came to San Francisco in "January and February of 1994" to discuss production of the Program with Elmo Shropshire. Declaration of Elmo Shropshire in Opposition to Defendant's Motion to Dismiss and Motion to Strike ("Shropshire Decl.") at ¶ 3; see also Complaint at ¶ 7. But see Declaration of Fred Rappoport in Support of Motion of Defendant the Fred Rappoport Company to Dismiss for Improper Venue or, in the Alternative, to Transfer for Improper Venue, or, in the Alternative, to Transfer for Convenience ("Rappoport

Decl.") at ¶ 7 (stating that Rapport's "only contact ... with the District in connection with the claims alleged against it was one trip to San Francisco in which [he] met with Elmo Shropshire before the execution of the Agreement") (emphasis added). While Fred Rappoport was in San Francisco, he asked for the exclusive merchandising rights to the Song, which request was denied. Complaint at ¶ 8. The parties continued to negotiate, and in March of 1995, FRC again asked for exclusive merchandising rights. Id. at ¶ 9. Again, the request was denied. Id.

On May 24, 1996, Elmo Shropshire and FRC signed a Dramatic Rights Agreement ("the Agreement"). Id. at ¶ 10; see also, Exh. 1 to Complaint (Agreement). Elmo Shropshire signed the Agreement in Marin County, California. Id.; see also Shropshire Decl. at ¶ 14 (stating that Elmo Shropshire signed the Agreement in "Northern California"). Under the Agreement, Elmo Shropshire and Kris Publishing granted FRC an option, to expire on May 31, 1998, to obtain certain rights in the Song, described in Paragraph 3 as follows:

RIGHTS. Upon execution of the Exclusive Rights Period, Publishers shall grant to [FRC] the exclusive dramatic rights and synchronization license to the Song for any television, or any other audio/visual presentation, theatrical or film presentation/programs based upon the song. These rights extend to all media existing or hereafter existing for the purposes of exploitation and promotion of the presentation/programs. None of the Rights granted to [FRC] herein shall be restrictive to Publishers in their normal business of licensing the Song for mechanical recordings (cassettes, compact discs, or other recorded media), synchronization rights (video, films, television programs, commercials, etc.), performance royalties, print royal-

ties or any other royalties, as long as such royalties are not derived by products which include any dramatic use of the plot or characters as part of the license.

Agreement at ¶ 3, Exh. 1 to Complaint. With respect to merchandising, the Agreement provided as follows:

> MERCHANDISING. Publishers will share in the Net Profit amounts retained by Company from merchandising. Company will have the exclusive right to merchandise material from the Programs. Company will retain a 30% fee, plus normal and reasonable expenses related to the merchandising, and pay fifty percent (50%) of the remainder, which is considered Net Profits, to the Publishers. Such amounts shall be accounted for and paid to Publishers within a reasonable period of time, not to exceed six (6) months after receipt of these amounts by Company.

*Id.* at ¶ 7. The Agreement provided that FRC would pay 25% of net profits to Elmo Shropshire and Kris Publishing. *Id.* at ¶ 8. Finally, the Agreement could be terminated by Elmo Shropshire and Kris Publishing if FRC did not "complete a production and deliver such production of the Program to a broadcaster, advertiser, syndicator or distributor for the intent of worldwide distribution before two (2) years following the execution of the Exclusive Rights Period." *Id.* at ¶ 4.

FRC exercised the option granted under the Agreement on May 31, 1998, and therefore, FRC had until May 31, 2000, to complete and deliver the Program to a broadcaster for worldwide distribution. Complaint at ¶ 15.

Elmo Shropshire was a principal writer and actor in the Program. *Id.* at ¶ 12; *see also* Shropshire Decl. at 15. Elmo Shropshire wrote the script for the Program in Marin County, California, Shropshire Decl. at ¶ 15. He accepted numerous calls from FRC while he was in Marin County regarding re-writes to the script, *id.* at ¶ 16, and received payments for his work on the Program in Marin County. *Id.* at ¶ 17.

In 1999, a dispute arose concerning a deal that was being negotiated between Elmo Shropshire and Kris Publishing, on the one hand, and a toy maker, Dan–Dee International, Ltd. ("Dan–Dee"). Complaint at ¶¶ 52–60. Under the proposed agreement, Dan–Dee was to manufacture a line of toy dolls containing a computer chip that played the Song and pay Elmo Shropshire and Kris Publishing $0.28 per doll. *Id.* at ¶ 44. Under the agreement, Dan–Dee was to be indemnified for any claims arising out of the use of the Song. *Id.* at ¶ 56. On May 28, 1999, FRC claimed that it had exclusive merchandising rights under the Dramatic Rights Agreement and threatened to sue Dan–Dee if it went through with the deal. *Id.* at ¶ 54. As a result, Kris Publishing refused to sign the deal and the deal fell through. *Id.* at ¶¶ 56–57. Subsequently, Dan–Dee took a compulsory licence of the Song paying Elmo Shropshire and Kris Publishing $0.755 per doll. *Id.* at ¶ 58. Faced with a threat by Dan–Dee to hire its own musicians to perform the song, Elmo Shropshire agreed to a license to Dan–Dee for use of the Song in the toy in return for payment to Elmo Shropshire and Kris Publishing of $0.755 per doll. *Id.* at ¶ 59.

■ On October 6, 1999, FRC sued Ellyn Trigg, Kris Publishing, Elmo Shropshire and Elmo Publishing in California Superior Court ("the state court action"), seeking a declaratory judgement that FRC owned the exclusive merchandising rights to the Song. Complaint at ¶ 60. In the state court complaint, the plaintiffs alleged that they had performed all of their obligations under the agreement. *See* Request to Take Judicial Notice in Support of Motion of Defendant the Fred Rappoport

Company ("Request for Judicial Notice"), Exh. 1 (State court complaint) at ¶ 10.[1] In their answer, which was signed on December 24, 1999, the defendants admitted this allegation to be true. *Id.*, Exh. 2. Subsequently, the plaintiffs sought to amend their complaint when they learned, through discovery, that Dan–Dee had obtained its licensing rights under the compulsory licensing provisions of the Copyright Act rather than directly. *See id.*, Exh. 3 (Stipulation Re: Filing of First Amended Complaint). The defendants did not object to the amendment of the complaint, and signed a stipulation providing that Dan–Dee would file an amended answer but that "[t]he Answers filed by defendants Shropshire and Trigg to the original Complaint may be deemed to be their Answers to the First Amended Complaint." *Id.* at ¶ 3. The Stipulation was filed on July 25, 2000. *Id.*

The superior court issued a Statement of Decision on August 31, 2001. *Id.*, Exh. 5 (Statement of Decision). In the Statement of Decision, the superior court determined that the language of the agreement with respect to merchandising rights was ambiguous and therefore, parol evidence could be considered. *Id.* at 13. The court reviewed the evidence regarding the negotiation of the agreement and concluded that there was no meeting of the minds with respect to merchandising rights, with each side harboring a different understanding of what merchandising rights had been granted when the agreement was signed. *Id.* The court then addressed the rights and duties of the parties, noting that although the usual remedy where there is no meeting of the minds is rescission, the parties did not request rescission. *Id.* at 15. The court noted also that rescission would be impractical because "the major operative portions of the contract (e.g. the development of the working script, the animation of the program, arranging its initial telecast) had already been completed and, therefore, rescission would be extremely difficult especially as to the remedy's component requiring' restoration of value' by both sides." *Id.* The court then concluded both sides had an equal claim to the merchandising rights under the Agreement. *Id.* at 16.

The parties appealed the decision, and the court of appeal reversed. Exh. 2 to Complaint. The court of appeal concluded that the Agreement was unambiguous and that it did not give FRC exclusive merchandising rights to license the Song for use in Dan–Dee's stuffed toy. *Id.* at 13. Accordingly, on February 6, 2003, judgment was entered in favor of the defendants in the state court action, Elmo Shropshire, Shropshire Publishing, Ellyn Trigg, and Kris Publishing. *Id.* at 14.

On May 24, 2000, FRC delivered what Elmo Shropshire alleges to have been an "incomplete animated motion picture" based on the Song to Odyssey Network ("Odyssey"), in Los Angeles, and paid Odyssey to broadcast the program. Complaint at ¶ 16. In particular, the program did not include two songs and corresponding scenes. *Id.* at ¶ 20. Also, the credits on this incomplete program were different from those that appeared at the end of the complete program. *Id.* According to Elmo Shropshire, FRC did not deliver the program to Odyssey with the intent that it would be distributed worldwide. *Id.* at ¶ 18. On the same day the incomplete program was delivered to Odyssey, Elmo Shropshire requested a VHS copy of the

---

**1.** Defendant FRC requests that the Court take judicial notice of the documents and pleadings filed in the state court action. *See* Request For Judicial Notice. Plaintiffs raise no objection to Defendant's request. The Court GRANTS Defendant's request, pursuant to Rule 201 of the Federal Rule of Evidence.

program. *Id.* at 22. FRC told Elmo Shropshire that if he wanted to view the program, he would have to come to Los Angeles, at his own expense, to do so. *Id.* at ¶ 23. Elmo Shropshire went to Los Angeles and screened the program that had been delivered to Odyssey on June 14, 2000. *Id.* at ¶ 25. On September 11, 2000, Elmo Shropshire notified FRC that it had not completed and delivered the program with the intent of worldwide distribution by May 31, 2000, and therefore, FRC's rights to the Song were terminated. *Id* at ¶ 27.

According to Elmo Shropshire, after FRC's rights were terminated, it continued to represent to third parties that it had the rights to the Song, and distributed and broadcast a complete version of the program on numerous networks. *Id.* at ¶¶ 29–34. FRC has made no payments to Elmo Shropshire for these broadcasts. *Id.* at ¶¶ 36, 37.

## B. *Procedural Background*

Plaintiffs filed this action on May 23, 2003, and asserted the following claims in their complaint:

Claim One: Copyright Infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.;*

Claim Two: Intentional Interference with Prospective Economic Advantage;

Claim Three: Negligent Interference with Prospective Economic Advantage;

Claim Four: Unfair Competition, in violation of Cal. Bus. & Prof.Code §§ 17200 *et seq.;*

Claim Five: Breach of Contract;

Claim Six: Accounting.

On July 25, 2003, Defendant filed the Motion to Dismiss and the Motion to Strike. In the Motion to Dismiss, Defendant makes the following arguments:

1. *Estoppel:* Defendant asserts that Plaintiffs' copyright infringement claim should be dismissed under the doctrines of judicial, equitable, and collateral estoppel because Plaintiffs admitted in the state court action that Defendant performed under the Agreement and because the court relied on this admission in its holding. Defendant argues further that if the Copyright infringement claim is dismissed, the Court should decline to exercise jurisdiction over Plaintiffs' remaining state law claims.

2. *Venue:* Defendant argues that venue in the Northern District of California is improper because a "substantial" part of the events in the action did not occur in Northern California. Defendant therefore asks that the action be dismissed or that it be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

3. *Anti–SLAPP:* Defendant argues that Plaintiffs' interference claims (Claims Two and Three) and Unfair Competition Claim (Claim Four) must be stricken under California's anti-SLAPP statute, Cal.Code Civ. Proc. § 425.16. Under the anti-SLAPP statute, where an action arises from any act in furtherance of a person's right to petition or to free speech, the action is subject to a special motion to strike unless the plaintiff can demonstrate a probability of prevailing. Defendant argues that Plaintiffs cannot prevail on these claims because they are barred by the litigation privilege contained in California Civil Code § 47.

4. *Statutes of Limitations:* Defendant asserts that Plaintiffs fail to state a claim as to the two interference claims because these claims are barred by the applicable statutes of limitations. In addition, Defendant asserts that they are entitled to recover reasonable attorneys' fees under the anti-SLAPP statute, in the amount of

$6,500.00, for the costs associated with bringing the Motion to Strike.

5. *Attorneys' fees:* Defendant seeks attorneys' fees under the anti-SLAPP statute, in the amount of $6,500.00 for the costs associated with bringing the Motion to Strike.

In their Opposition, Plaintiffs make the following arguments:

1. *Estoppel:* Plaintiffs argue that Defendant's estoppel arguments fail for several reasons. First, Plaintiffs' Stipulation that the original Answer in the state court action would be deemed the answer to the First Amended Complaint did not amount to a "clearly inconsistent" statement as to whether Defendant had performed under the Agreement. At most, it was an inadvertent admission which resulted in no prejudice to Defendant because from the time the May 31, 2000 deadline passed for performance, Plaintiffs consistently maintained that Defendant failed to timely perform. Second, there was no judicial acceptance of the admission in the state court proceeding. Third, Plaintiffs have derived no advantage from the admission, to the extent there was an admission, in the state court proceeding.

2. *Venue:* Venue is proper because a substantial part of the events from which the claims arise occurred in the Northern District of California. Moreover, a transfer for convenience is not justified.

3. *Anti–SLAPP Statute:* Plaintiffs argue that as a threshold matter, the anti-SLAPP statute does not apply to the interference and unfair competition claims because those claims do not "arise from" protected activity. In particular, Plaintiffs argue that these claims are not based on Defendant's state court action seeking a declaratory judgment but rather, are based on acts of the Defendant independent from the state court action that interfered with Plaintiffs' business. Plaintiffs argue further that even if the anti-SLAPP

statute applies to these claims, the Motion should be denied because it is too early to require Plaintiffs to present evidence that there is a probability of prevailing when no discovery has been permitted. Further, Plaintiffs argue that they do have a probability of prevailing because there is evidence that Defendant knew it did not have exclusive merchandising rights when it brought the state court action. Plaintiffs argue that the litigation privilege does not apply because the statements were not made in the litigation itself, but prior to litigation and because there was no logical connection between the statements and the litigation.

4. *Statutes of Limitations:* Plaintiffs argue that the interference claims are not barred under the statute of limitations because, under the discovery rule, Plaintiffs did not actually suffer harm until the end of the declaratory relief action. Alternatively, Plaintiffs argue that the claims were equitably tolled pending resolution of the state court action.

5. *Attorneys' Fees:* Plaintiffs argue that Defendant is not entitled to attorneys' fees under the anti-SLAPP statute and that Plaintiffs instead should be awarded attorneys' fees under that statute.

## III. ANALYSIS

### A. Venue

Defendant asserts that venue is improper in the Northern District of California because a "substantial part of the events or omissions giving rise to the claim" did not occur in the district and there is no other basis for venue in this district. Because venue is improper, Defendant asserts, the action should be dismissed or transferred to the Central District of California pursuant to 28 U.S.C. § 1406(a) (allowing court to transfer a case where venue is improper if transfer is in the "interest of justice"). Defendant

argues in the alternative that the action should be transferred pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties. Venue is proper in the Northern District of California. The Court denies Defendant's request for a transfer under either provision.

### i. § 1406(a) Transfer

■ Venue for claims asserted under the Copyright Act is governed by 28 U.S.C. § 1400(a), which provides as follows:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

28 U.S.C. § 1400(a). The Ninth Circuit has held that under this section, venue is proper "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broadcasting of Birmingham,* 106 F.3d 284, 289 (9th Cir.1997). Alternatively, venue for copyright claims may be found where a substantial part of the events or omissions giving rise to the claim occurred, under 28 U.S.C. § 1391(b).

Plaintiffs point to a number of contacts which, they argue, make venue in this District proper. *See* Shropshire Decl. at ¶¶ 12–19. In particular, Elmo Shropshire states in his declaration that: 1) the Song was produced in Northern California; 2) FRC sent Elmo Shropshire numerous letters, faxes, and e-mails in Northern California during the negotiation of the Agreement; 3) Elmo Shropshire signed the Agreement in Northern California; 4) Elmo Shropshire was the principal writer and actor on the program and wrote the script for the program in Northern California; 5) FRC telephoned Elmo Shropshire in Northern California regarding changes and rewrites to the script; 6) FRC sent Elmo Shropshire payments for his work in Northern California; 7) Elmo Shropshire has seen advertising for the VHS and DVD version of the program in Northern California; and 8) Elmo Shropshire has purchased multiple copies of the VHS and DVD versions of the program in Northern California. *Id.*

■ The Court concludes that venue in the Northern District of California is proper under § 1391(b) because a substantial part of the events giving rise to the claims took place in this District. In particular, some of the negotiations on the Agreement were conducted in Northern California, Elmo Shropshire signed the Agreement in Northern California, and a substantial portion of the performance under the Agreement occurred in this district. As Plaintiffs' claims will turn on the interpretation of the Agreement—most importantly, what constitute a "complete" program under the Agreement—these contacts are significant in determining whether venue in this District is proper. *See JSP Int'l v. Tri–Tech Group, Inc.,* 1995 WL 413299, *5 (S.D.N.Y.) (holding that in breach of contract action venue is proper where the contract is negotiated and executed or where it was supposed to be performed).

### ii. Section 1404(a) Transfer

■ Defendant also requests that the Court transfer this action to the Central District of California, pursuant to 28 U.S.C. § 1404(a), because litigating in this District imposes a severe hardship on Defendant. The Court denies Defendant's request.

■ Section 1404(a) allows the court to transfer an action "[f]or the convenience of parties and witnesses [and] in the interest of justice ... to any other district or division where it might have been brought." Section 1404(a) displaces the common law

doctrine of forum non conveniens and differs from forum non conveniens in that it allows courts to transfer actions in the interest of justice rather than having to dismiss them. *Decker Coal v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). However, courts draw on forum non conveniens considerations when deciding whether a § 1404 transfer is appropriated. *Id.* In particular, courts considering this issue balance the preference that is traditionally accorded the plaintiff's choice of forum against the burden to the defendant of litigating in an inconvenient forum. *Id.*

The defendant must make a strong showing of inconvenience to upset the plaintiff's choice of forum. *Id.* In determining whether this burden has been met, courts look to private and public interest factors. *Id.* As the court in *Decker* explained,

> Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."... Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

*Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

Having considered the factors listed in *Decker,* the Court concludes that FRC has not made a sufficient showing to justify transferring this action to the Central District of California. First, although some of the evidence and witnesses are in Los Angeles, where FRC is based, *see* Rapoport Decl., other evidence and witnesses are in Northern California, where Elmo Shropshire is based. *See* Shropshire Decl. Still other witnesses are outside of California altogether. *See id.* Second, Defendant has not cited any "public factors" that support a transfer. Under these circumstances, where the inconvenience to Defendant of litigating in the Northern District of California is about the same as the inconvenience to Plaintiffs of litigating in the Central District of California, it would be improper to disturb Plaintiffs' choice of forum. *See Decker Coal,* 805 F.2d at 843.

**B. *Estoppel***

**1. Judicial Estoppel**

Defendant asserts that Plaintiffs are barred, under the doctrine of judicial estoppel, from asserting their copyright claim because that claim is based on the allegation that Defendant did not timely perform under the Agreement—an allegation which, Defendant asserts, is clearly inconsistent with the position taken by Elmo Shropshire in the state court action. Defendant cites the Answer in the state court action and the later Stipulation deeming the original Answer to answer the First Amended Complaint. The Court concludes that the doctrine of judicial estoppel should not be invoked here.

■ Judicial estoppel is an " 'equitable doctrine invoked by a court at its discretion.' " *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)). In an early decision, the Supreme Court described the doctrine as follows:

[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Id.* (quoting *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). The purpose of the doctrine is to protect the integrity of the judicial system by prohibiting a party from "playing fast and loose with the courts." *Id.* (quotations omitted). The doctrine may be invoked not only where the inconsistent statements are made in the same proceeding but also, where the inconsistent statements are made in separate proceedings. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir.2001).

 In invoking the doctrine of judicial estoppel, courts typically consider three factors:

First, a party's later position must be "clearly inconsistent" with its earlier position. . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that

party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," . . . . Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," . . . and thus poses little threat to judicial integrity. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine,* 532 U.S. at 750–751, 121 S.Ct. 1808. Here, the Court declines to invoke the doctrine of judicial estoppel because there was no judicial acceptance of Plaintiffs' earlier statement, even assuming the remaining two factors supported Defendant's position.[2]

Nowhere in its decision did the court of appeal make a legal determination that FRC had satisfactorily performed under the agreement. The court of appeal did not reach that issue because it concluded that FRC's declaratory relief claim failed on other grounds, namely, that the Agree-

---

**2.** The Court notes that both of the remaining factors involve factual disputes. Therefore, if the Court were required to reach these factors, the question of judicial estoppel would not be suitable for resolution on a 12(b)(6) motion. *See John S. Clark Company v. Faggert & Frieden P.C.,* 65 F.3d 26, 29 (4th Cir. 1995) (holding that district court had erred in dismissing claim under judicial estoppel doctrine on Rule 12(b)(6) motion because question of whether party intentionally misled court to gain unfair advantage was a question of fact). First, the question of whether Plaintiffs' positions in the two actions are "clearly inconsistent" turns, in part, on the intent of Elmo Shropshire in taking the positions. *Id.; see also Wyler Summit P'ship v. Turner Broad. System, Inc.,* 235 F.3d 1184, 1190 (9th Cir. 2000) (holding that to find judicial estoppel, there must be "a knowing antecedent misrepresentation by the person or party alleged to

be estopped"). Similarly, the question of whether Defendant was prejudiced by the change in position raises factual issues. For example, Defendant asserts that it was harmed because it detrimentally relied on Plaintiffs' prior position in arranging for numerous broadcasts after May 31, 2000. Motion to Dismiss at 17. Plaintiffs, on the other hand, assert that Elmo Shropshire consistently maintained that Defendant had not performed and that the program that was delivered by FRC to Odyssey on May 24, 2000, was not complete. *See* Shropshire Decl. at ¶ 9; *see also* Declaration of Douglas P. Oh–Keith in Opposition to Defendant's Motion to Dismiss and Motion to Strike ("Oh–Keith Decl.") at Exh. B (Shropshire Deposition Testimony, in which Elmo Shropshire testified that the program was incomplete). Thus, the question of whether Defendant reasonably relied to its detriment is a question of fact.

segmentment did not grant FRC exclusive merchandising rights with respect to Dan-Dee's stuffed toy.[3]

The Court rejects FRC's argument that the Court of Appeal adopted Plaintiffs' position because it "ruled that Rappoport had the right under Paragraph 3 of the Agreement to prevent Shropshire and Trigg from licensing the Song for other products that dramatized the Song—a right to which Rappoport would not have been entitled had the courts not accepted the position that it had performed its obligations under Paragraph 4.a. of the Agreement." Apparently, Defendant is relying on the following language in the Court of Appeal decision:

> It is clear that the Publishers did not give Rappoport the right to control all merchandising of the song. The agreement prevents the Publishers from licensing the song for other products dramatizing the song and merchandising material created for Rappoport's program. However, the agreement does not prevent the Publishers from licensing the song for use with generic merchandise that might compete with Rappoport's program-specific merchandise.

February 6, 2003 Decision at 13, Exh. 2 to Complaint; *see also* Judgment at ¶ 6 (incorporating quoted language). On its face, it is clear that this statement does not amount an adoption of the position that FRC, *in fact*, satisfactorily performed under the Agreement by delivering a complete program by the required date. Rather, this statement simply *interprets* the Agreement, addressing the rights that were and were not granted to FRC with respect to merchandising.

Because there was no judicial acceptance of Plaintiffs' earlier position in the final judgment in the state court action, it is unnecessary to invoke the doctrine of judicial estoppel to protect the integrity of the judicial process.

## 2. Equitable Estoppel

The doctrine of equitable estoppel differs from the doctrine of judicial estoppel to the extent that it is aimed at protecting litigants rather than the integrity of the judicial system. *See Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1220 (6th Cir.1990). As a result, a party need not demonstrate judicial acceptance in order to invoke the doctrine of equitable estoppel. *Id.* The factors that courts consider in invoking the doctrine of equitable estoppel have been described by the Ninth Circuit as follows:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir.1981) (citations omitted).[4] Be-

---

**3.** Given that the decision of the superior court was reversed, it is unlikely that that decision is relevant to this inquiry. Even if it were, however, the Court does not find that the superior court adopted Elmo Shropshire's position either. In particular, the superior court never concluded that the program that was delivered to Elmo Shropshire on May 24, 2000, constituted adequate performance under the Agreement. Rather, the superior court merely made a practical determination that as the bulk of the work under the con-

tract had already been performed, rescission of the contract would be difficult.

**4.** Both parties suggest in their briefs that the elements of equitable estoppel are governed by California law. In fact, Defendant's equitable estoppel defense is governed by federal common law because the action arises under a federal statute. *See Audit Servs.*, 641 F.2d at 761 (holding that where action arose under federal law, federal common law rather than state law, was controlling with respect to

cause all of these factors turn on disputed facts, it is improper for the Court, on a Rule 12(b)(6) motion—the purpose of which is test the sufficiency of the *pleadings*—to resolve this issue. Therefore, the Court rejects Defendant's assertion that Plaintiffs' copyright infringement claim must be dismissed under the doctrine of equitable estoppel. Defendant may, however, raise this issue on summary judgment.

### 3. Collateral Estoppel

Finally, Defendant asserts that Plaintiffs' copyright infringement claim is barred by collateral estoppel, that is, that Plaintiffs may not relitigate in this action the question of whether FRC performed under the Agreement because that issue was already resolved in the state court action. The Court disagrees.

 "Federal courts give a state judgment the same preclusive effect that that judgment would receive in state court." *The San Remo Hotel v. City and County of San Francisco,* 145 F.3d 1095, 1103 (9th Cir.1998). Therefore, California preclusion rules apply. Under California law, collateral estoppel applies when the following conditions are met:

First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

availability of equitable estoppel defense). The elements are the same, however, under

*Lucido v. The Superior Court of Mendocino County,* 51 Cal.3d 335, 341, 272 Cal. Rptr. 767, 795 P.2d 1223 (1990). As discussed above, the Court concludes that the question of whether the program delivered to Odyssey on May 24, 2000, constituted satisfactory performance of the Agreement was not decided by the court of appeal in its decision or in the judgment. Accordingly, the collateral estoppel doctrine does not apply.

### C. Anti–SLAPP Statute

Defendant asserts that it is entitled to an order striking Plaintiffs' claims for intentional interference with prospective economic advantage (Claim Two); negligent interference with prospective economic advantage (Claim Three); and unfair competition (Claim Four), under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. That section provides as follows:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal.Civ.Proc.Code § 425.16. Thus, the Court must determine, as a preliminary matter, whether these three claims are based on protected activity under § 425.16. *See Navellier v. Sletten,* 29 Cal.4th 82, 88, 124 Cal.Rptr.2d 530, 52 P.3d 703 (2002). If they are, the Court must determine whether there is a probability of prevailing on these claims. *Id.*

both California law and federal common law.

Defendant asserts that Claims Two, Three and Four are based on protected activity because they are based on the assertion made by Defendant to Dan–Dee that Defendant owned all merchandising rights under the Agreement and threatening to sue Plaintiffs and Dan–Dee if they entered into an agreement to manufacture the stuffed toys. *See* Complaint at ¶¶ 74, 83, 89–90. Defendant argues that these statements were in anticipation of litigation and therefore, are protected under § 425.16. Plaintiffs, on the other hand, argue that the anti-SLAPP statute does not apply because these claims are not based on acts taken in furtherance of Defendant's petitioning and free speech rights but rather, are based on other conduct.

■ The Court is unable to resolve this issue at this stage of the proceeding, when no discovery has been permitted, because the applicability of the anti-SLAPP statute turns on disputed questions of fact.

Section 425.16(e) defines protected activity as follows:

(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of

free speech in connection with a public issue or an issue of public interest.

Cal.Civ.Proc.Code § 425.16(e). California courts have held that " 'the constitutional right to petition' includes the basic act of filing litigation or otherwise seeking administrative action." *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1115, 81 Cal.Rptr.2d 471, 969 P.2d 564 (1999) (citations omitted). In *Briggs*, the court held further that "just as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], ... such statements are equally entitled to the benefits of section 425.16." *Id.* (citations omitted). Thus, in addition to looking to the case law addressing § 425.16, the Court also looks to the case law addressing California's litigation privilege to determine whether Defendant's activity is protected under the anti-SLAPP statute.

In support of its Motion to Strike, Defendant points to *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 54 Cal.Rptr.2d 830 (1996) (cited with approval in *Briggs*, 19 Cal.4th at 1115, 81 Cal.Rptr.2d 471, 969 P.2d 564). In *Dove Audio*, actress Audrey Hepburn's son asked a law firm to investigate the low royalty payments that had been received from a recording company that was to pay a percentage of royalties from a recording by Audrey Hepburn and other celebrities to the performers' designated charities. *Id.* at 780, 54 Cal.Rptr.2d 830. The law firm sent letters to the other celebrities who had performed stating that little money had gone to the charities and that it intended "to file a complaint with the State Attorney General's Office." *Id.* The letter further requested that the celebrities inform the law firm whether they were willing to "endorse" the firm's efforts. *Id.* In response, the recording company, Dove

Audio, filed an action against the law firm asserting claims for libel and interference with economic relationship, asserting that the letter suggested it failed to pay royalties and that this hurt Dove Audio's reputation and business. *Id.* The law firm brought a motion to strike under California's litigation privilege, Cal. Civ.Code § 47 and under the anti-SLAPP statute. *Id.*

The Court in *Dove Audio* began by holding that the litigation privilege applied. *Id.* at 781, 54 Cal.Rptr.2d 830. The court cited an earlier California case in which a court had held that a demand letter from an attorney to a potential adversary prior to litigation fell under the litigation privilege. *Id.* (*citing Lerette v. Dean Witter Org., Inc.,* 60 Cal.App.3d 573, 577, 131 Cal.Rptr. 592 (1976)). The court also cited a case holding that the litigation privilege applies to communications made during an attorneys' investigatory interviews with private individuals preparatory to a hearing. *Id.* (*citing Ascherman v. Natanson,* 23 Cal.App.3d 861, 100 Cal.Rptr. 656 (1972)). The Court went on to address the anti-SLAPP law, finding that the claims asserted were based on protected activity. *Id.* at 784, 54 Cal.Rptr.2d 830. The court held that "just as communications preparatory to or in anticipation of the bringing of the action or other official proceedings are within the protection of the litigation privilege of Civil Code § 47, subdivision (b) . . . we hold that such statements are equally entitled to the benefits of § 425.16."*Id.*

Plaintiffs counter that their claims are not subject to the anti-SLAPP statute because they do not "arise from" protected activity. In support of this position, Plaintiffs rely on *Kajima Engineering and Constr. v. City of Los Angeles,* 95 Cal. App.4th 921, 116 Cal.Rptr.2d 187 (2002). In *Kajima,* a construction company that had worked on a reconstruction project for the City of Los Angeles sued the city for breach of contract, claiming it was owed payment for the work. *Id.* at 924, 116 Cal.Rptr.2d 187. The City filed a cross-complaint, alleging breach of contract, breach of the implied covenant of good faith, and nineteen other claims. *Id.* The construction company brought a motion to strike under § 425.16. The court denied the motion, and the court of appeal affirmed. The court of appeal explained that even if the City filed the cross-complaint in retaliation for Kajima's lawsuit, the counterclaims were not subject to § 425.16 because they were based on Kajima's "bidding and contracting practices" and not on acts in furtherance of Kajima's right of petition or free speech. *Id.* at 929, 116 Cal.Rptr.2d 187.

The Court does not reach whether *Dove Audio* or *Kajima* is more on point because it concludes that Defendant's anti-SLAPP motion raises factual questions that cannot be resolved at this stage of the proceeding. In particular, the question of whether Plaintiffs' communications to Dan–Dee were made in anticipation of litigation for the purpose of California's litigation privilege, and thus also for the purposes of the anti-SLAPP statute, depends upon whether Defendant's statements were made "with a good faith belief in a legally viable claim and in serious contemplation of litigation." *See Aronson v. Kinsella,* 58 Cal. App.4th 254, 266, 68 Cal.Rptr.2d 305 (1997). This a factual question and therefore, Plaintiffs must be permitted to conduct discovery before Defendant's anti-SLAPP argument may be addressed. *See Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir.2001) (holding that to the extent that anti-SLAPP statute allows plaintiff to be put to proof before discovery is permitted, that statute conflicts with Federal Rule of Civil Procedure 56 and should not be applied in federal court).

### D. Statute of Limitations

■ Defendant asserts as an independent ground for dismissal that with respect to the interference claims, the applicable statutes of limitations bar Plaintiffs claims. Because this issue turns, in part, on factual questions, the Court concludes that dismissal of these claims is inappropriate on a Rule 12(b)(6) motion and therefore, rejects Defendant's position.

Plaintiffs' interference claims are based on the allegation that Defendant disrupted the relationship between Elmo Shropshire and Dan–Dee when Defendant told Dan–Dee on May 28, 1999, that FRC had the exclusive merchandising rights to the Song. Complaint at ¶ 54, 74 and 83. As a result of this act, Plaintiffs allege, Kris Publishing backed out of a deal that had been negotiated with Dan–Dee because it was unwilling to agree to an indemnity clause in the agreement in light of the threat of litigation by FRC. Complaint at ¶ 57. In October of 1999, Elmo Shropshire was forced to accept a much less favorable agreement with Dan–Dee after Dan–Dee took a compulsory licence to the Song. Complaint at ¶ 59. Three and one-half years later, Plaintiffs filed this action, on May 3, 2003. Thus, on its face, the interference claims are barred by both the two year statute of limitations in Cal.Civ.Proc. Code § 339(1), for intentional interference claims, and the three year statute of limitations in Cal.Civ.Proc.Code § 338, for negligent injury to property, unless the limitations periods were tolled.

■ The Court finds no authority in support of Plaintiffs' argument that, under the discovery rule, the interference claims did not accrue until the state court action was finally resolved, on May 18, 2003. According to Plaintiffs, they did not "legally discover" that they had been harmed by FRC until the state court of appeal ruled in their favor on the issue of merchandising rights under the Agreement. Plain-

tiffs cite *McKelvey v. Boeing North Am. Inc.,* 74 Cal.App.4th 151, 86 Cal.Rptr.2d 645 (1999) in support of their position. That case is not on point. In *McKelvey,* the plaintiffs brought a class action against Boeing alleging that they had been harmed by water contamination caused by Boeing. *Id.* at 155–157, 86 Cal.Rptr.2d 645. Boeing argued that the claims were barred by the applicable statutes of limitations and requested that the court take judicial notice of several newspaper articles and other documents discussing the contamination. *Id.* at 157, 86 Cal.Rptr.2d 645. Boeing argued that the claims accrued when these articles were published because at that point, the plaintiffs had the information to put them on notice that their injuries were caused by wrongdoing. *Id.* The court agreed, rejecting the plaintiffs' contention that they were unaware of their injuries and citing to the newspaper articles. *Id.* Nothing in *McKelvey* suggests that a plaintiff does not "discover" a claim—even though the plaintiff is aware of the facts giving rise to injury—until a legal determination has been made in a separate action as to the wrongfulness of a defendant's conduct.

■ Plaintiffs also argue that their claims may be subject to equitable tolling on the basis of the state court action. Under California law, a plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy the following three factors: "1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes v. City of San Diego,* 5 F.3d 1273 (9th Cir.1993). Defendant asserts that there was no equitable tolling because the first requirement is not met here, that is, the state court action did not put it on

notice that it would need to prepare a defense as to Plaintiffs' interference claims because Elmo Shropshire was not a plaintiff in that action. While the equitable tolling cases generally involve prior actions initiated by the plaintiff rather than the defendant, the Court cannot say, as a matter of law, that the state court action *could not* have put Defendant on notice of Plaintiffs' interference claims. The question of notice is a fact-specific inquiry and thus, is more appropriately addressed on summary judgement. *Id.* at 12766. Accordingly, the Court declines Defendant's request to dismiss Plaintiffs interference claims at this stage in the proceedings.

### E. Attorneys' Fees

 Defendant seek an award of attorneys' fees if it prevails on its Motion to Strike, pursuant to § 425.16(c). Plaintiffs counter that they should be awarded attorneys' fees under the same section. Section 425.16(c) provides as follows:

> (c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

Cal.Civ.Proc.Code § 425.16(c). The Ninth Circuit has concluded that this provision does not conflict with the Federal Rules and therefore, should be applied in federal court. *United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999). Here, neither Plaintiffs nor Defendant is entitled to attorneys' fees: Defendant did not prevail on its Motion to Strike, but that Motion also is not frivolous. Accordingly, the Court denies all parties' requests for an award of attorneys' fees.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is DENIED with prejudice, except as to the issue of equitable estoppel, as to which the Motion to Dismiss is DENIED without prejudice to raising that issue on summary judgment. Defendant's Motion to Strike is DENIED without prejudice to raising the issues in that Motion on summary judgment.

IT IS SO ORDERED.